IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARPENTERS PENSION TRUST FUND
OF KANSAS CITY., *et al*.,

    *Plaintiff*,

vs.

DRYWALL, INC., and
ROBERT KNOBLAUCH,

    *Defendants*.

Case No. 21-2172-EFM

**MEMORANDUM AND ORDER**

On October 18, 2022, the Court conducted a hearing to address the Plaintiffs' motion for contempt sanctions against Defendant Robert Knoblauch, the former owner of Defendant Drywall, Inc., following his detention. The Court addressed the existing allegations of contempt as well as Defendant's financial status, and reviewed the history of the action with the parties. As stated at the conclusion of the hearing, and as further explained below, the Court finds that further contempt sanctions against Defendant would be futile, that Plaintiff's most recent contempt motion failed to fully apprise the Court of the status of the case, and that the present action should be dismissed.

## I.      Factual and Procedural Background

Plaintiffs, six construction union trusts and their trustees, brought suit on April 4, 2021 against Defendants Drywall, Inc. and Knoblauch, for (among other things) failing to make required fringe benefit payments to union members in violation of The Employee Retirement Security Act (ERISA).[1] Plaintiffs sought an award of contributions, an accounting, and liquidated damages, as well as recovery on a note issued by one of the unions. After Defendants failed to respond to the Complaint, the Court entered default judgment against Drywall on May 27, 2021 and against Knoblauch on July 6, 2021. The judgments provided for an accounting, the maintenance of records, the payment of sums due for unpaid benefits, and recovery on the note. Plaintiffs subsequently moved for a judgment debtor examination under federal and state law,[2] as well as a further finding of civil contempt.

On October 21, 2021 the Court found Defendants in contempt. The Court also ordered Knoblauch to appear for an examination before the Magistrate Judge "concerning Drywall, Inc.'s and Robert Knoblauch's property, ability, and means to satisfy Plaintiff's May 27, 2021 and July 6, 2021 Judgments."

At the November 3, 2021 examination, Plaintiffs reported that they had received copies of two vehicle registrations, but that Defendants had otherwise supplied nothing addressing the Court's most recent Order. The Magistrate Judge asked Knoblauch if he had additional business

---

[1] *See* ERISA Section 502(g)(2). 29 U.S.C. § 1132(b)(2).

[2] Fed. R. Civ. P. 69(a) and K.S.A. 60-2419.

records. He responded, "No, ma'am, I do not. My computer got into ransomware. They wanted ten grand. I don't have that kind of money. Everything's there."

After this preliminary discussion, the Magistrate Judge departed and the rest of the examination was conducted by Plaintiff's counsel. Asked about his personal tax returns, Knoblauch testified that he does not have them, his wife does, and "[s]he wouldn't give them to me. 'Cause her name was all over with her and she filed them." When counsel told him the Order specifically included tax returns as subject to disclosure, Knoblauch responded, "If she doesn't give them to me, how am I going to get 'em?" As to the return for Drywall, Inc., Knoblauch testified "We'd only been in business a year and I didn't file it."

Knoblauch testified he had possession of two vehicles, both of which were subject to repossession for payments. "The truck has a balance of 10,000 and it's only worth, like, four; and the Harley's balance is, like, 16 and it's only worth, like, five or six." He testified that the discrepancy existed because he had stopped paying on the vehicles. He testified that he and his wife have about $25,000 equity in their $150,000 home.

Knoblauch testified he cannot produce further business records because of the ransomware on his computer, which demands $10,000 to unlock the files. Knoblauch testified he had spoken to an IT specialist, Steve Brown, about the issue.

He testified that "[w]e was only in business last year," and that Drywall Inc. has zero dollars in its account at Home Bank & Trust, and that the bank will not release its records without some additional payment. He testified he was not then working employed. "Nobody's going to hire me right now. I don't have a college degree [and I am] too old to work in the field."

Plaintiffs' counsel asked Knoblauch to supply any further documents he finds. Counsel expressed no doubt regarding the ransomware story, and indeed appeared to concede the issue, stating, "Obviously, if the ransomware is preventing you from getting that, then that is what it is."

Knoblauch responded, "If you guys want to take it on, you guys can have it."

On November 23, 2021, the Court ordered Drywall to pay $1,785.15 in attorney's fees and $30.69 in expenses as a sanction for the contempt.

On January 31, 2022, Plaintiff moved to enforce civil contempt proceedings, stating "it is clear that neither Defendant [Drywall] nor Robert Knoblauch have any intention of complying with this Court's directive absent fines or incarceration." According to Plaintiff's motion, Defendants "have made it clear to this Court that there is no intent on their part to comply with any of this Court's orders." Plaintiffs asked for an order directing the United States Marshal to arrest Knoblauch and bring him to the Court to address the contempt. Plaintiffs did not .mention or address the facts presented at the debtor's examination.

On March 29, 2022, the Court found Defendant and Knoblauch in continued contempt, directed production of business records, and stated that in the absence of compliance, it would issue a warrant "to apprehend Robert Knoblauch and hold him in custody until such time as he purges himself and Drywall of civil contempt." The Court issued a bench warrant on May 5, 2022. The warrant was executed on October 17, 2022.

## II.     Analysis

"[C]ivil contempt is characterized by the court's desire to compel obedience of the court order or to compensate the litigant for injuries sustained from the disobedience."[3]  Thus, a party held in in civil contempt "carries the keys of his prison in his own pocket" and "can end the sentence and discharge himself at any moment by doing what he had previously refused to do."[4] Sanctions for civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."[5]

As stated at the hearing, there are substantial grounds for doubting Knoblauch's contention that he has received no notice of potential contempt sanctions.  The record confirms that August 18 Show Cause Order was served on both defendants by certified mail.  Further, the notice of the debtor's examination was personally served by the United States Marshal on Knoblauch in the parking lot of the McDonalds in downtown Wichita, Kansas on October 28, 2021 with "[n]o issues."

However, it is not clear that Knoblauch was notified of Plaintiff's most recent motion for contempt sanctions.  The January 31, 2022 motion to enforce sanctions does state that Plaintiffs mailed a copy of that motion by certified and regular mail to both Defendants, but does not indicate if the attempt to serve notice on both Defendants was successful.

---

[3] *Ager v. Janice C. Stormont Hosp. & Training Sch. for Nurses*, 622 F2d 496, 500 (10th Cir. 1980) (internal quotation and citation omitted).

[4] *Gompers v. Buck's Stove & Range Co*., 221 U.S. 418, 441 (1911).

[5] *United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

In their April 28, 2022 Status Update, Plaintiffs report they "delivered the Court's March 29, 2022 Order, via certified mail, to Drywall, Inc.'s Registered Agent," and the attached receipt shows that a person at the Registered Agent's office signed for the Order on April 4, 2022. There is no indication Plaintiffs also attempted to serve Knoblauch individually.

There is strong reason to believe that serving Drywall, Inc.'s registered agent is no longer a method which would be reasonably likely to give notice to its former owner. Plaintiffs previously reported in 2021 that a business entity search from the Kansas Secretary of State's website for August 12, 2021, indicating that Drywall, Inc. is "ACTIVE AND IN GOOD STANDING," but this only indicates that the business was then registered, not that it was solvent and active. Moreover, the report also indicates that Drywall had last filed an annual report in December, 2020, and that the next annual report was due April 15, 2022. It does not appear that Plaintiffs subsequently attempted to confirm the status of Drywall, Inc. The Court checked the website the morning before the hearing, and found the Secretary of State now lists the status of Drywall, Inc. as "FORFEITED – FAILURE TO TIMELY FILE A/R." This corroborates the information produced at the debtor's examination.

Coercive sanctions are also likely futile in the present action given the financial status of both Defendants, as revealed at the debtor's examination. "[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt."[6] "Where compliance is impossible, neither the moving

---

[6] *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (citations omitted).

party nor the court has any reason to proceed with the civil contempt action."[7] Thus, "a *present* inability to comply" with an order to produce documents is a defense to a contempt charge, and "while [the contemnor] could not attack the enforcement order on the ground that he lacked possession or control of the records at the time the order was issued, he could defend the contempt charge on the ground that he was *then* unable to comply because he lacked possession or control."[8]

However, the more fundamental problem with continuance of the present action is the failure of the most recent motion for sanctions to include any acknowledgement of what was learned during the debtor's examination. As stated at the hearing, this failure undermines the integrity of the present action, and warrants on its own dismissal of the action.

In deciding whether to sanction wrongful conduct, the Court may consider (1) "the degree of actual prejudice to the defendant"; (2) "the amount of interference with the judicial process"; (3) "the culpability of the litigant"; (4) "whether the court warned the [litigant] in advance that dismissal of the action would be a likely sanction for noncompliance"; and (5) "the efficacy of lesser sanctions."[9]

Weighing these factors, the Court concludes that dismissal of the present action is a heavy but appropriate sanction. The prejudice to Defendant Knoblauch, who lacks the financial

---

[7] *United States v. Rylander*, 460 U.S. 752, 757 (1983) (citations omitted).

[8] *Id*. (emphasis in original).

[9] *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).

ability to employ counsel, was extreme. "[F]reedom from bodily restraint . . . lies at the core of the liberty protected by the Due Process Clause."[10]

Similarly, the representation to the Court worked substantial interference with the judicial process. Plaintiff at the hearing advanced no satisfactory rationale for advancing its last motion for contempt sanctions without acknowledging what was learned during the course of the debtor's examination. Had the January 31, 2022 motion forthrightly acknowledged any of the facts discovered at the debtor's examination, the motion would not have been granted, and the warrant against Knoblauch would not have been issued.

While Plaintiff was not previously warned of the sanction of dismissal, the Court only learned of the facts immediately prior to and during the hearing, and Plaintiff was given a full and fair opportunity at the hearing to respond to the Court's concerns.

The Court does not find any lesser sanction is appropriate. An additional consideration in the present case, as discussed earlier, is that the Court finds that given Defendant Knoblauch's insolvency, no further purpose is served by further contempt proceedings.

The Court concludes that the relevant factors, taken together, warrant dismissal of the action.

---

[10] *Turner v. Rogers*, 564 U.S. 431, 444-45 (2011) (citations, internal quotations, and alterations omitted).
.

**IT IS ACCORDINGLY ORDERED** that, for the reasons stated above, the present action is hereby dismissed.

**IT IS SO ORDERED**.

Dated this 19th day of October, 2022.

This closes the case.

ERIC F. MELGREN
CHIEF UNITD STATES DISTRICT JUDGE